IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

PATRICIA KAY M.,[1]  )
                     )
        Plaintiff,   )
                     )
vs.                  )   Case No. 19-cv-065-DGW[2]
                     )
COMMISSIONER of SOCIAL )
SECURITY,            )
                     )
        Defendant.   )

## MEMORANDUM and ORDER

**WILKERSON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff, represented by counsel, seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Income Security (SSI) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for disability benefits in October 2014, alleging disability as of February 25, 2012. After holding an evidentiary hearing, an ALJ denied the application on December 27, 2017. (Tr. 84-95). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1).

---

[1] In keeping with the court's recently adopted practice, plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Docs. 10 & 16.

Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following points:

1. New and material evidence was submitted to the Appeals Council which would have changed the ALJ's decision had he considered it.

2. The ALJ erred by selectively considering and "cherry-picking" the evidence concerning plaintiff's degenerative disc disease and pain issues.

3. The ALJ erred in rejecting the opinion of plaintiff's treating doctor.

4. The ALJ erred in assessing the reliability of plaintiff's subjective allegations.

## Applicable Legal Standards

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[3] Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following

---

[3] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. A negative answer at any step, other than at step three, precludes a finding of disability. The plaintiff bears the burden of proof at steps one through four. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show that there are jobs existing in significant numbers in the national economy which plaintiff can perform. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### **The Decision of the ALJ**

The ALJ followed the five-step analytical framework described above. He determined that plaintiff had not worked at the level of substantial gainful activity since the alleged onset date. She was insured for DIB only through December 31, 2012.

The ALJ found that plaintiff had severe impairments of degenerative disc disease, migraines, anxiety disorder, and depression.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform work at the light exertional level limited to no climbing of ladders, ropes, or scaffolding; occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; and occasional pushing and/or pulling with her lower extremities. The ALJ also assessed mental limitations, but plaintiff raises no issue as to her mental impairments.

Based on the testimony of a vocational expert, the ALJ concluded that plaintiff was not able to do her past work as a medical records clerk or medical receptionist, but she was able to do other jobs that exist in significant numbers in the national economy.

**The Evidentiary Record**

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to plaintiff's arguments.

1. **Agency Forms**

Plaintiff was born in 1963 and was 54 years old on the date of the ALJ's decision. A prior claim had been denied in May 2013 at the Appeals Council level. There is no indication that plaintiff sought judicial review. (Tr. 340).

In a Function Report submitted in December 2014, plaintiff said she could not work because she had three surgeries on her neck, had bone spurs on her shoulders and a herniated disc in her low back, and had migraines. (Tr. 380). She could only lift five pounds. Her legs hurt all the time. She could stand for ten minutes and walk for one hundred to two hundred feet. She could sit for fifteen to twenty minutes. When she had a migraine, she could not think because the pain was "so unbearable." (Tr. 385). She was living with her parents and going through a divorce when she completed the report. (Tr. 387).

In September 2015, she reported that her primary care doctor had referred

her to Dr. Pfalzgraf, a "rheumatoid doctor," to see about getting infusions for arthritis. (Tr. 404).

Plaintiff submitted a "Recent Medical Treatment" form in June 2017, identifying treatment from Dr. Theodore Davies and Dr. Frederick Pfalzgraf. She said that Dr. Pfalzgraf prescribed gabapentin for fibromyalgia in March 2016. (Tr. 431-432).

### 2. Evidentiary Hearing

Plaintiff was represented by an attorney at the evidentiary hearing in September 2017. (Tr. 103). The representation agreement with that attorney was signed in May 2017. (Tr. 272).

The ALJ asked counsel if he knew of any outstanding medical records. He said no, except for a headache log created by plaintiff. (Tr. 105-106). That log was entered into the record after the hearing at Tr. 441-480.

Plaintiff lived by herself at the time of the hearing. (Tr. 111). She testified that she had three surgeries on her neck and was still having problems. She went to Dr. Davies in Paducah, and he was "still doing some MRIs." She also had bad migraines. She took Amitriptyline and Topamax. She also took Imitrex when she felt a migraine coming on. She had a herniated disc in her back. She was seen at a pain management clinic in Marion. (Tr. 116-119).

Plaintiff had found out from Dr. Pfalzgraf that she had fibromyalgia.[4] She originally went to him for osteoarthritis. She had carpal tunnel surgery on her

---

[4] This doctor's name is incorrectly spelled in the transcript as "Fallsgrath." See, Tr. 121.

right hand. She had seen Dr. Davies the prior week and he was not sure why the strength had not come back yet in her right hand. (Tr. 121-122). She was set to return to Dr. Davies on the 12th and was to get an MRI of her neck before then.[5] (Tr. 129).

The ALJ noted that plaintiff "grids at sedentary," meaning she would be deemed disabled under the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2, if she were limited to sedentary work. (Tr. 135).

### 3. Relevant Medical Records

The ALJ had before him medical records from plaintiff's primary care physician, Dr. Thomas Staton, and a pain management specialist, Dr. Yogesh Malla.

The earliest record is an office note by Dr. Malla, dated in June 2011. Plaintiff was already an established patient and was receiving periodic steroid injections in her back for low back and leg pain. These injections gave her pain relief for four to six weeks. He also prescribed Hydrocodone-Acetaminophen, i.e., Norco. (Tr. 512).

Dr. Malla continued to treat plaintiff through at least July 2017. (Tr. 481-513, 520-524, 607-625). In October 2012, he noted that, in addition to low back pain, she had neck pain since 2008. She had a history of two anterior cervical fusions. Among other problems, he diagnosed cervical post laminectomy

---

[5] The hearing was on September 6, 2017. Presumably, plaintiff was to see Dr. Davies on September 12, 2017.

syndrome and cervicogenic headache. (Tr. 506-508). In May 2013, he noted that she was doing "fine with the medication management with more than 50% relief." He continued to prescribe Norco and Norflex. (Tr. 502-503). In August 2013, Dr. Malla found tenderness and muscle spasm in both the cervical and lumbar areas. Straight leg raising was positive for back pain on the right. (Tr. 500). In May 2014, he substituted Mobic for Norflex to get "better control of her symptoms." (Tr. 491).

In March 2015, Dr. Malla gave her another steroid injection. She had not had one for two years because of insurance and financial issues. She had been on medication, but it gave her less than 50% relief. (Tr. 524). Dr. Malla continued to administer lumbar epidural injections about every three months and to prescribe Norco through July 2017. (Tr. 609-625). For many of the visits, there are not detailed notes of the findings on physical exam.

Dr. Staton's record go from December 2011 through May 2015 (Tr. 535-591) and from June 2015 through July 2017 (Tr. 595-606). There is a gap in the records from August 2015 (Tr. 595) through May 2017 (Tr. 601). At the visit on May 9, 2017, Dr. Staton noted for the first time a history of fibromyalgia, and that she was taking gabapentin. She was seen for heartburn on that date. (Tr. 601). It is unclear whether Dr. Staton had seen her all in 2016.

4. **Medical Opinions**

State agency consultants assessed plaintiff's RFC based on a review of the records in February and July 2015. (Tr. 195-1967, 218-220). These

assessments generally corresponded to the ALJ's physical RFC assessment.

Dr. Staton wrote a letter addressed to plaintiff in June 2017 to "help summarize your condition regarding disability." He briefly summarized some of her complaints and treatment. He did not provide a functional capacity assessment. He wrote, "At this point I agree that you are permanently and totally disabled." (Tr. 592).

5. **Medical Records Submitted to the Appeals Council**

After the ALJ denied plaintiff's claim, plaintiff's counsel submitted additional medical records to the Appeals Council in conjunction with his request for review. Counsel's memo requesting review described these records as "records from Baptist Health Medical Group and Dr. John [sic] Pfalzgraf and Family Physicians of Alton that are not currently in the record." The memo asserted that counsel's staff discussed plaintiff's treatment with her prior to the hearing but plaintiff was unable to accurately recall where and when she had been treated due to her medical conditions and medications "and their impact on her memory and ability to concentrate." (Tr. 305).

The records are located at Tr. 18-80. Pages Tr. 18-64 are the records of Dr. Theodore Davies, who practiced with Baptist Health Medical Group in Paducah, Kentucky, reflecting treatment from April 2016 through December 11, 2017. Pages Tr. 65-70 are radiology and ECG reports, including the report of a lumbar MRI done on February 13, 2017. Pages Tr. 71-80 are the records of Dr. Frederick Pfalzgraf, reflecting treatment on September 13, 2017, and December 13, 2017.

## Analysis

Plaintiff's first point concerns the medical records submitted to the Appeals Council.

The medical records at Tr. 18-80 cannot be considered by this Court in determining whether the ALJ's decision was supported by substantial evidence. Records "submitted for the first time to the Appeals Council, though technically a part of the administrative record, cannot be used as a basis for a finding of reversible error." *Luna v. Shalala*, 22 F3d 687, 689 (7th Cir. 1994). See also, *Getch v. Astrue*, 539 F.3d 473, 484 (7th Cir. 2008).

The regulation governing Appeals Council review, 20 C.F.R. § 404.970, provides in relevant part:

> (a) The Appeals Council will review a case if—
>
> . . . .
>
> (5) Subject to paragraph (b) of this section, the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision.

20 C.F.R. § 404.970(a)(5).

Paragraph (b) of that section provides that the Appeals Council will only consider new evidence under paragraph (a)(5) if the claimant shows "good cause" for not submitting the evidence to the ALJ before the ALJ's decision. Good cause includes being prevented by a physical or mental limitation from informing the agency about the new evidence or submitting the new evidence.

Paragraph (c) of that section provides:

If you submit additional evidence that does not relate to the period on or before the date of the administrative law judge hearing decision as required in paragraph (a)(5) of this section, or the Appeals Council does not find you had good cause for missing the deadline to submit the evidence in § 404.935, the Appeals Council will send you a notice that explains why it did not accept the additional evidence and advises you of your right to file a new application.

Pursuant to 42 U.S.C. § 405(g), a claimant may obtain review in this Court of a "final decision of the Commissioner of Social Security." When the Appeals Council denies a request for review, as happened here, the decision of the ALJ becomes the final decision of the Commissioner, and it is the decision of the ALJ which is reviewed by this Court. 20 C.F.R. §404.981; *Eads v. Secretary of Dept. of Health and Human Services*, 983 F.2d 815, 816 (7th Cir. 1993).

The decision of the Appeals Council denying review, as opposed to an order refusing to consider additional evidence because the evidence was nonqualifying under the regulation, is within the discretion of the Appeals Council. It is not the final decision of the Commissioner, and it is not subject to review by this Court. 42 U.S.C. § 405(g); *Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir. 1997).

However, the Court may consider the issue of whether an Appeals Council order refusing to consider additional evidence was the result of a mistake of law. *Stepp v. Colvin*, 795 F.3d 711, 722 (7th Cir. 2015); *Farrell v. Astrue*, 692 F.3d 767, 770-771 (7th Cir. 2012).

*Stepp* and *Farrell* provide limited guidance here because they were considering the old version of § 404.970. Crucially, the older version of the

regulation did not contain a provision equivalent to paragraph (c).

The Notice of Appeals Council's Action here stated:

> You submitted treatment notes from Theodore Davis [sic], MD/ Baptist Health, dated April 11, 2016 through December 11, 2017 (63 Pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence. (Tr. 2).

The Appeals Council did not explicitly state whether it accepted the evidence as qualifying under the regulation. Under the analysis followed in *Stepp* and *Farrell*, the Court would have to parse the Appeals Council's language to divine whether it accepted or rejected the new evidence in the first instance. However, this Court reads the new subsection (c) as placing an affirmative duty on the Council to state that it did not accept the new evidence where that happens, and to explain why. This new provision makes the *Stepp/Farrell* analysis unnecessary. It is clear that the Council accepted the new evidence here but denied review because it found that the new evidence would not change the outcome of the ALJ's decision. That is a substantive denial of review. It is not a final decision subject to review by this Court. *Perkins, supra*.

Significantly, plaintiff does not argue that the ALJ rejected the new evidence as nonqualifying under the regulation. Rather, she argues that the new evidence is "a total game changer." Doc. 18, Ex. 1, p. 4. After defendant filed his brief pointing out that plaintiff had not argued that the Appeals Council committed an error of law, plaintiff filed a reply brief again arguing that the new evidence would have resulted in a different outcome had it been considered by the ALJ. Doc. 24,

pp. 1-4. That is exactly the argument that this Court is without jurisdiction to consider. *Perkins*, 107 F.3d at 1294; *Stepp*, 795 F.3d at 722.

As for Dr. Staton's opinion, the ALJ accurately observed that the one-page letter did not contain a function by function analysis and merely concluded that plaintiff was permanently and totally disabled. (Tr. 93). The ALJ was, of course, not required to accept Dr. Staton's opinion; "while the treating physician's opinion is important, it is not the final word on a claimant's disability." *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996) (internal citation omitted). The ALJ was correct that a finding of disability is an administrative matter reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1). Dr. Staton offered no opinion as to plaintiff's ability to perform the functions of work, and the ALJ justifiably found his letter to be conclusory and of little probative value. Considering the deferential standard of judicial review, the ALJ is required only to "minimally articulate" his reasons for accepting or rejecting evidence, a standard which the Seventh Circuit has characterized as "lax." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008); *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). The Court finds that the ALJ easily met the minimal articulation standard here.

Plaintiff is correct, however, that the ALJ selectively considered the medical evidence and erred in determining the reliability of her subjective allegations.

SSR 16-3p, effective March 28, 2016, superseded SSR 96-7p on evaluating the claimant's statements about her symptoms. SSR 16-3p does not change the prior standard; rather, it emphasizes that:

> In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person. Rather, our adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities. . . .

SSR 16-3p, 2016 WL 1119029, at *10.

As did SSR 96-7p, the new SSR requires the ALJ to consider the entire record, and to consider a number of factors in assessing the claimant's credibility, including the objective medical evidence, the claimant's daily activities, medication for the relief of pain, and "any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." SSR 16-3p, at *7.

The Seventh Circuit has "repeatedly held that although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). That is what the ALJ did here.

The ALJ twice stated that plaintiff testified that she had been diagnosed with fibromyalgia, but this was not reflected in the medical records. See, Tr. 87, 92. Citing to medical records from 2012, 2013, and 2014, he remarked that she denied a history of fibromyalgia. In determining that plaintiff's statement was undercut by the record, the ALJ ignored two pertinent pieces of evidence.

First, plaintiff's "Recent Medical Treatment" form, submitted before the hearing, said that Dr. Frederick Pfalzgraf prescribed gabapentin for fibromyalgia in March 2016. (Tr. 431-432). Secondly, in May 2017, Dr. Staton noted a history of fibromyalgia, and that she was taking gabapentin. (Tr. 601). These records, not mentioned by the ALJ, tend to confirm plaintiff's testimony that Dr. Pfalzgraf diagnosed her with fibromyalgia.

In addition, the ALJ said that plaintiff's testimony about having carpal tunnel surgery was not supported by "corresponding objective evidence." (Tr. 92). However, plaintiff testified that Dr. Davies treated her for carpal tunnel syndrome. She also identified Dr. Davies on her Recent Medical Treatment Form.

Plaintiff identified treatment by Drs. Davies and Pfalzgraf well before the hearing. It appears that no attempt was made to obtain their records. An ALJ has an independent duty to develop the record fully and fairly. 20 C.F.R. § 404.1512(b). "Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits [internal citation omitted]." *Sims v. Apfel*, 120 S. Ct. 2080, 2085 (2000). While that duty is enhanced where plaintiff was pro se at the agency level, it is not eliminated where a claimant had counsel. *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) ("This duty is enhanced when a claimant appears without counsel....").

In sum, the ALJ ignored evidence in the record in assessing plaintiff's

credibility and characterized her testimony as unsupported even though she identified supporting medical records before the hearing which the ALJ failed to obtain.

An ALJ's decision must be supported by substantial evidence, and the ALJ's discussion of the evidence must be sufficient to "provide a 'logical bridge' between the evidence and his conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009), internal citations omitted. The Court must conclude that the ALJ failed to build the requisite logical bridge here.

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff was disabled during the relevant period or that she should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying plaintiff's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE: August 23, 2019.**

**DONALD G. WILKERSON
UNITED STATES MAGISTRATE JUDGE**